**ELLISOR et ux. v. KENNEDY et al.**

**No. 10659.**

Court of Civil Appeals of Texas. Galveston.

March 30, 1939.

Rehearing Denied June 1, 1939.

Henry Adams and Earle P. Adams, both of Crockett, for appellants.

Kennedy & Granberry, of Crockett, for appellees.

CODY, Justice.

This suit was brought on April 3, 1937, by appellants in trespass to try title to a certain 79.9-acre tract in Houston County, and also to remove cloud cast on their title thereto by a certain instrument executed by appellants as grantors, on May 21, 1927, and which they delivered to appellees, which instrument is set forth verbatim hereinafter, and was also brought in the alternative to construe such instrument.

The instrument just referred to was executed and delivered the day after appellants had given appellees an oil, gas and mineral lease covering the same property in such instrument. There is no controversy about the lease. It was in usual form, and the only thing unusual about it is that it was paid up for its primary term of five years, and since there was no production under it was not extended beyond its primary term. The instrument of May 21, 1927, and which is the cause of the controversy, reads as follows:

"The State of Texas ⎱
County of Houston ⎰

"Know All Men by These Presents: That we, J. W. Ellisor & Eunice Ellisor, of the County of Houston, State of Texas, have and by these presents do grant, bargain, sell, convey, set over and assign and deliver unto C. W. Kennedy & A. S. Spence, the following, to-wit:

"One-half royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Houston County, Texas, to-wit:

"70 acres of land out of the Josiah Herod Pre-Emption Survey of a 320 acre tract located on the waters of the Elkhart Creek about 13-½ miles N W from the City of Crockett. Same being the same land conveyed to J. E. Keen by the heirs of Jim Keen and conveyed by J. E. Keen to J. W. Ellisor on the 21st day of May, A. D. 1921, recorded in Houston County Deed Records in Book 101, page 432, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

"And said above described lands being now under an oil and gas lease originally executed in favor of C. W. Kennedy & A. B. Spence and now held by C. W. Kennedy and A. B. Spence, it is understood and agreed that this sale is made subject to said lease, but covers and includes onehalf of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said J. W. Ellisor, and in the event that the said above describe lease for any reason becomes cancelled or forfeited, then and in that event, the lease interest and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by C. W. Kennedy and A. B. Spence and J. W. Ellisor, each owning ———— interest in all oil, gas and other minerals in and upon said land, together with ———— interest in all future rents.

"This sale is made for and in consideration of the sum of Forty & 00/100 Dollars cash in hand paid, the receipt of which is hereby acknowledged.

"To have and to hold the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said J. W. Ellisor, his heirs and assigns forever, and we do hereby bind ourselves, heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said Kennedy and Spence, heirs and assigns, against

every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands this the 21st day of May, A. D. 1927.

"J. W. Ellisor
"Eunice Ellisor."

"(Acceptance admitted).

The pleadings filed below by the parties cover 55 pages in the transcript, hence no detailed statement of them is possible.

Appellants alleged, among other things, that the instrument conveyed to appellees only one-half of the one-eighth royalty which appellants were to receive under the lease of May 20, 1927, and that upon the expiration of the lease the interest conveyed by the instrument of May 21, 1927, aforesaid, terminated. Appellants plead further that, if mistaken in such construction, then it conveyed to appellees an undivided half of an eighth of the minerals produced from 70 acres of the land in controversy. Appellants also alleged they were ignorant, and that appellees represented to them that any interest passed by the instrument of May 21, 1927, would lapse whenever the lease lapsed, and that they had confidence in appellees, and that if these representations were false the instrument was procured by fraud. They also alleged that the property was a homestead, and that the wife's acknowledgment was fatally defective because it was taken in her husband's presence, and that the contents were not explained by the notary, and that he did not ask her if she had willingly signed the instrument, and that the notary was an employee of one of the appellees.

Appellees alleged that it was the intention of the parties that the instrument was to vest in appellees half of the minerals in the entire tract, which the parties thought at that time contained but 70 acres. And in their cross-action against appellants, appellees alleged that the word "royalty" as used in such instrument was intended to mean "mineral", and that the use of the word "royalty" was the result of a mutual mistake, as was also the use of "70" acres, instead of 79.9 acres. To appellees' cross-action appellant pled limitation.

The case was tried before a jury. But before any evidence was introduced, the trial judge announced that the instrument in question would be construed by recourse only to its own terms, and within its four corners, and that no extraneous evidence would be admitted to determine its meaning. Then, at the conclusion of the evidence, the learned judge, over the objection of all parties, discharged the jury, holding that no fact questions were raised by the evidence, and held that the instrument was a mineral deed, conveying to appellees an undivided 35-acre interest, and rendered judgment accordingly. All parties appealed. And then, after the court had, by dismissing the jury, in effect instructed a verdict, he then, at appellants' request, made findings of fact and conclusions of law.

■ If there was any ambiguity in the meaning of the contract which is in controversy, and any dispute as to the interpretation placed on it by the parties, then the issue as to its true meaning was one of fact for the jury, Kirlicks v. Texas Company, Tex.Civ.App., 201 S.W. 687, 690; 10 Tex.Jur. 331. In Curry v. Texas Company, Tex.Civ.App., 8 S.W.2d 206, 211, the court said:

■ "The ultimate purpose of the courts should be to arrive at the real intention of the parties to a contract, and to give the contract force accordingly. It is an important rule of construction that a written contract, plain and reflecting no shadow of doubt as to its meaning, shall be the sole evidence of the intention of the contracting parties. But, if the contract is not clearly unambiguous, the rule should not be permitted to defeat an intention and understanding which can be clearly proven by parol, and to lead to a conclusion which is absurd."

■ On the face of the foregoing instrument, it is ambiguous. Both sides considered it ambiguous and pleaded the real intention of the parties. To us it seems impossible to arrive at the true intent of the parties from the instrument itself. Even the habendum clause, it will be noted, runs to the grantors.

The judgment of the lower court is reversed. Upon a new trial the court should admit oral testimony relative to the intention of the parties to such instrument, and if the evidence warrants, and the relief is sought, reform the instrument to express clearly the intention of the parties.

Reversed and remanded.