EAST 82ND STREET CORPORATION, Appellant, *v.* FRANKLIN L. ROGERS, Respondent.

First Department, July 2, 1920.

**Landlord and tenant — sublease equivalent to assignment — provision as to renewal of lease — provision that landlord may exhibit premises to prospective tenants — suit for injunction to compel compliance with said provision — notice by tenant of intention not to renew — waiver of untimeliness of said notice.**

Where a tenant sublets the demised premises with the approval of the landlord and the sublessee thereafter pays rent directly to the landlord, the transaction is equivalent to an assignment of the unexpired term of the lease and the sublessee becomes bound by all of its provisions.

Where a lease provided that seven months prior to the expiration of the term the tenant should permit the premises to be exhibited by the landlord to prospective tenants, and gave the landlord a right to apply for an injunction in the event of a breach or a threatened breach by a tenant of any of the covenants or provisions of the lease, the landlord is entitled to an injunction where the subtenant refused to permit the premises to be exhibited to other persons during the period provided for in the lease.

Such refusal cannot be justified upon the ground that the lease was extended for another year by reason of a clause therein providing for such extension unless either party notified the other by " registered mail " prior to March first of an intention not to renew or continue, where it appears that upon the landlord informing the tenant in writing that the rent would be increased for the following term, the tenant notified the landlord in writing that he would not renew the lease.

Such written notices given by landlord and by tenant were sufficient under

the terms of the lease as a notice of intention not to renew, although not sent by " registered mail," for the latter provision was merely intended to insure delivery of the notice, and a failure to comply therewith is immaterial where it is not disputed that the notice was actually received.

The notice of an intention not to renew given by the tenant was effectual and binding as against him, although not given before the first of March, where the landlord formally acknowledged the receipt thereof and waived the untimeliness of the notice and acted thereon.

APPEAL by the plaintiff, East 82nd Street Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of May, 1920, denying the plaintiff's motion for an injunction *pendente lite.*

*Franklin Waldheim* of counsel [*Frederick F. Neuman* with him on the brief]; *Neuman & Newgass,* attorneys, for the appellant.

*Lewis Hopkins Rogers,* for the respondent.

GREENBAUM, J.:

This is an appeal from an order denying plaintiff's motion for an injunction *pendente lite* arising out of the following state of facts. Plaintiff is the owner of a certain apartment house in which the defendant occupies an apartment by virtue of a lease which expires on September 30, 1920. This lease was originally made to one George Cerio, who subsequently gave a sublease to the defendant tenant for the unexpired term of the lease subject to all the conditions and covenants therein which the defendant assumed. This so-called sublease was approved of by the plaintiff and the rent, as stated in open court, although the affidavits make no reference to the matter, was thereafter paid by the defendant directly to the landlord. It may, therefore, be assumed that the sublease was the equivalent of an assignment of the unexpired term of the lease to the defendant, who was bound by all of its provisions. One of the provisions of the lease reads as follows: " That seven months prior to the expiration of the term prospective tenants shall be admitted from 9 A. M. to 6 P. M. to view the premises until rented; and the landlord or the landlord's agents shall be permitted at any time during the term of the lease to visit

and examine the premises at any reasonable hour of the day."
There is another provision in the lease which reads as follows:
" In the event of a breach or threatened breach by the tenant
of any of the covenants or provisions hereof, the landlord
shall have the right of injunction and the right to invoke any
remedy allowed at law or in equity, as if re-entry, summary
proceedings and other remedies were not herein provided for
or permitted by law."

The complaint is supplemented by a number of affidavits
which conclusively show that the defendant has refused on
many occasions and still refuses, notwithstanding plaintiff's
repeated requests, to permit plaintiff and its representatives
to enter said premises for the purpose of permitting prospective
tenants to view the same.   There can be no question from
these affidavits that numerous persons were anxious to lease the
premises and desired to inspect the premises before consum-
mating a lease therefor.   Defendant indeed admits these facts.

Defendant, however, claims that the term of the lease was
extended for another year by reason of a clause in the lease
which reads as follows: " The term of this lease shall at the
end of the term hereinbefore specified, be continued for a
further period of one year, all the remaining conditions
provisions and covenants of this instrument to continue in
force and to apply in all respects as herein provided, unless
either party has notified the other by registered mail prior to
March 1st, 1920, of its intention not to renew and continue."

The clear effect of this provision was, unless a notice not to
renew was given as above set forth, that the lease became
automatically renewable for a further year with all of the
provisions, conditions and covenants thereof, excepting of
course only as to the original term of the lease.   Whether
or not the lease was continued in force for another year depends
upon whether certain written communications, which con-
cededly passed between the parties, amounted to a notification
by either party or both of them that the lease would not be
renewed or continued within the meaning of the provisions
of the original lease.   The first of these communications is
dated February 6, 1920, written to Cerio, the assignor of the
defendant.   That was a clean cut notice in which the prior
lessee was advised by registered mail that the plaintiff cor-

poration would not renew the lease of the apartment in question.

It seems clear, however, that inasmuch as the original lessee had no interest whatever in the lease at the time when the notice was sent, it was futile and ineffective so far as the defendant is concerned. But it further appears that on the same day, that is, the 6th of February, 1920, plaintiff also wrote a letter to the defendant which reads as follows:

" Re No. 108 East 82nd Street,

    " Apartment 1-A.

" DEAR SIR.— The lease of the apartment which you occupy under sublease from Dr. George Cerio, expires September 30, 1920. The rent of apartment 1-A after September 30, 1920, will be $1200. Will you be good enough to advise us by March 1st, whether you desire to take a new lease as if not we wish to offer the apartment for rent to others.

" You will understand, of course, that this communication is not an offer and that we retain complete liberty to rent to others or to increase the rental without notice.

" We trust that you realize that the suggested increase in rent is not arbitrary but forced by increased cost of every kind. The apartments in this building were originally rented at an extremely low rate, and since that time increased taxes, increased cost of fuel, wages, supplies and repairs, together with mandatory legislation requiring the employment of additional help, have rendered it necessary for us to ask the increase designated.

" If it is your intention not to renew, we would esteem it a favor if you would notify us at once as we have numerous applications for apartments in the building.

                    " Very truly yours,
          " EAST 82ND STREET CORPORATION,
                    " per (Signed) SIDNEY WILDE,
" FRANKLIN L. ROGERS, Esq.,                    *Vice-President.*
          " 108 East 82nd Street,
                    " New York City."

Defendant does not deny that he received this letter and his attorney in his affidavit inferentially acknowledges its receipt.

On March 15, 1920, defendant sent to the plaintiff a letter of which the following is a copy:

"3/15

"Mr. HOLMES [referring to the manager of the plaintiff]:

"DEAR SIR.— This is to notify you that we will not take a further lease on our present apartment at 108 E. 82 St.

"I require more room and should you have apartments of 4, 5 or 6 rooms would be pleased to see them.

"Truly yours,
"(Signed)  F. L. ROGERS."

To this letter the plaintiff replied on the following day, March 16, 1920:

"DEAR SIR.— We beg to acknowledge receipt of your favor of the 15th inst. advising us that you do not intend to renew your lease on apartment 1-A at #108 East 82nd Street.

"The only apartments that we have for rent are two six room apartments at #114 East 84th Street, each of which rent for $3,000 per annum.

"If you would be interested in either of these apartments, the superintendent at the building will gladly show them to you.  The apartments are 8-C and 9-D.

"Very truly yours,
"EAST 82ND STREET CORPORATION,
"Per (Signed)  A. D. HOLMES."

Despite the letter of March fifteenth, defendant notified plaintiff in writing on the 23d of April, 1920, that he was unable to secure any other suitable apartment and that he desired to renew his lease, and he also stated in this letter: "As the showing of my apartment to prospective lessees is a continuous nuisance to me and my family I shall refuse to show same from and after this date."

In plaintiff's replying affidavit it is alleged that plaintiff, relying on the notice to plaintiff by defendant dated March fifteenth, made efforts to rent the apartment in question to other parties.  Defendant, however, maintains that unless either party notified the other by "registered mail" prior to March, 1920, of his intention not to renew and continue the

lease, it was continued for another year. Plaintiff's letter of February sixth was a sufficient compliance with the provision of the lease as to notice of its intention not to renew. There seems to be no escape from this conclusion. After stating that the lease expires on September 30, 1920, the letter proceeds to state that the rent of the apartment after that date would be $1,200. Under an automatic renewal, in case of no notice being given, the provision of the lease that the annual rental was $600 would have continued in force for another year at the same rental. The notice of the plaintiff that the rent for the ensuing year would be $1,200, being inconsistent with the idea that all the " other " provisions of the lease shall remain intact, indicates a clear intention on the part of the landlord not to renew. Moreover, the statement in the letter, " Will you be good enough to advise us by March 1st, whether you desire to take a new lease as if not we wish to offer the apartment for rent to others," can only mean that the owners did not intend to renew the lease under the old terms. This conclusion is emphasized by the paragraph which reads: " You will understand, of course, that this communication is not an offer and that we retain complete liberty to rent to others or to increase the rental without notice." A notice of cancellation may be couched in terms of courtesy.

Coming now to the defendant's notice to plaintiff of March fifteenth, in which he stated that he did not intend to renew the lease, it must be held that this notice was effectual and binding as against him. It is true that the notice was given after March first, but the plaintiff formally acknowledged receipt thereof and by its acquiescence therein it waived the untimeliness of the notice and acted thereon. It does not lie with the defendant now to disavow his deliberate act.

It thus follows that not only was plaintiff's letter of February sixth to defendant tantamount to a formal notice of its intention not to renew, but that defendant himself elected not to renew the lease unless it should be held that a strict compliance with the provision of the lease that such respective notices are to be given by " registered mail " is essential. The obvious purpose of providing for notice by registered mail was to insure the delivery of the notice and to settle

any dispute that might arise between the parties as to whether or not the notice was duly received. There is no dispute that the letter of February sixth was received by defendant before March first.

We are of opinion that on the undisputed facts the plaintiff is entitled to the injunctive relief for which it asked.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the injunction granted upon the execution and filing of a duly approved undertaking in the sum of $500.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion for injunction granted upon execution and filing of undertaking in the sum of $500. Settle order on notice.